STATE OF IOWA v. WESLEY WILTSEY, Appellant.

**Constitutional Law:** COMPULSORY PROCESS TO OBTAIN WITNESSES. Where the state admits that a sick witness for defendant would, if present, testify as stated in defendant's continuance affidavit, which the latter read on the trial, he has not been denied his constitutional right to compulsory process, and sections 2751 and 4556, Code, 1873, which permit the denial of a continuance under such facts, are not violative of such constitutional right.

**Grand Jury:** CHANGE IN STATUTE. A grand jury drawn prior to July 1, 1895, for that year, pursuant to the laws then in force, is competent to return an indictment subsequent thereto, though acts April 26, 1894, which took effect July 1, 1895, changed the law concerning the drawing of grand juries.

**Adultery:** EVIDENCE. The fact that a witness saw a man and woman in a cemetery, in the day time, hugging and kissing for half an hour, is not alone sufficient to justify a conviction of adultery; especially where but one witness testified to such act, both parties deny it, and intercourse at any time, and other parties who were watching them do not mention it.

*Appeal from Kossuth District Court.*—HON. LOT THOMAS, Judge.

FRIDAY, OCTOBER 8, 1897.

THE defendant was indicted for the crime of adultery, committed with Rose Shadle, the wife of L. K. Shadle. He was convicted, and sentenced to be confined

in the penitentiary for one year. He appeals.—
*Reversed.*

*D. C. Chase* and *Sullivan & McMahon* for appellant.

*Milton Remley*, attorney general, for the state.

KINNE, C. J.—I. Between the time of the drawing of the grand jury which found this indictment and the time the indictment was returned, the law touching the selection of grand jurors was changed, and said new act took effect July 1, 1895. The indictment was found in October, 1895. A challenge to the panel of the grand jury was interposed on the ground that said panel was not appointed, drawn, and summoned as prescribed by law. The challenge was not allowed. The ruling was correct. *State v. Graff*, 97 Iowa, 568.

II. Defendant made a motion for a continuance on the ground of the absence of a witness named Dahl, on account of sickness. The state having admitted that the witness, if present, would testify as stated in the affidavit, the motion was overruled, and the defendant excepted. Upon the trial the defendant read said affidavit to the jury. He now claims that, under the constitution, he was entitled to the personal attendance of the witness, or to a continuance. Our statute provides that "the rules of evidence prescribed in the civil part of the Code, shall apply to criminal proceedings as far as applicable and as they are not inconsistent with the provisions of this chapter." Code 1873, section 4556. Under Code 1873, section 2751, if the application be sufficient, the cause must be continued unless the adverse party will admit that the witness, if present, would testify to the facts therein stated, in which event the cause shall not be continued, but the

party may read as evidence of such witness the facts
held by the court to be properly stated. True it is that
the defendant has, by virtue of the constitution, the
right to have compulsory process for his witnesses.
That right he had in this case. On account of the sick-
ness of the witness, such process did not avail to bring
the witness into court; but the defendant was not
thereby deprived of his constitutional right. In *State
v. Kennedy*, 20 Iowa, 372, it was held that a defendant
had no absolute right, under this provision of the con-
stitution, to insist upon the personal attendance of a
witness who was a convict in the state penitent'ary.
In principle, that case is controlling in the case at bar.
There was no error in the court's ruling.

III. The serious question in this case is as to the
guilt of the defendant. The act of adultery upon which
conviction was had is said to have occurred in the ceme-
tery in the city of Algona, Iowa, on April 22,
1895. One witness testifies to having seen the
defendant and Mrs. Shadle go into the cemetery
on that day; that he did not see them upon the ground.
This witness says they hugged and kissed for a half
hour. Another witness, who was with the one before
referred to, saw them in the cemetery; says they were
standing up; that they moved around some. Still
another witness saw them enter the cemetery. The
evidence shows without conflict that, after entering the
cemetery, they went towards the grave of Mrs. Shadle's
father. All this occurred in daytime. But one witness
testifies to any improper conduct at the cemetery, and
he, only, that they were hugging and kissing. No other
witness saw that, though at least one other person was
watching Mrs. Shadle and the defendant while they
were in the cemetery. The defendant and Mrs. Shadle
both deny the kissing and hugging in the cemetery.
They positively deny having, at that or any other time,

had any connection with each other. Evidence was introduced showing the defendant's good character. Nothing improper is shown to have occurred at the cemetery between these parties except the hugging and kissing, and under the evidence it is not at all certain that they were guilty of those acts in that place. Giving the utmost force and effect to the unsupported testimony of one witness, and these acts in the cemetery only tended to show mutual affection, which, though manifestly improper, was not criminal. From a close examination of this record, we are forced to the conclusion that this verdict is not supported by the evidence. It cannot be truthfully said that it justified the jury in finding the defendant guilty of the crime charged, beyond a reasonable doubt. For this reason the judgment below is REVERSED.