Thomas Allen **HAHN**, Appellant,

v.

**STATE of Iowa**, Appellee.

No. 64659.

Supreme Court of Iowa.

June 17, 1981.

Kjas T. Long of Gottschalk, Shinkle & Long, Cedar Falls, for appellant.

Thomas J. Miller, Atty. Gen., Richard L. Cleland, Asst. Atty. Gen., and Patricia A. McGivern, Asst. Black Hawk County Atty., for appellee.

Considered by UHLENHOPP, P. J., and HARRIS, McGIVERIN, LARSON and SCHULTZ, JJ.

LARSON, Justice.

Thomas Allen Hahn contends, in his appeal from the denial of postconviction relief, chapter 663A, The Code 1977, that the trial court erred in (1) denying his attempts to secure the presence of two inmate-witnesses at the postconviction hearing, or as an alternative, to order the deposition of one of the witnesses; and (2) denying postconviction relief under the evidence presented. We affirm the trial court.

Hahn was convicted and sentenced on May 25, 1977, to a term of fifty years for the crime of rape, § 698.1, The Code 1975. On July 26, 1978, his postconviction relief application was filed, asserting that he had not understood the consequences of his plea, that the plea was coerced, and that his

counsel was ineffective. He also alleged, without specificity, that material evidence was recently discovered. He later filed amendments to the application to assert other grounds which are not involved in this appeal. Prior to the hearing on his postconviction application Hahn filed an "Application for Subpoena" to require the attendance of three witnesses: Betty Kuehn, a visiting worker with a local group called "Jail Concerns," Austin Druin, an inmate of the penitentiary at Fort Madison, and Dennis Fry, an inmate in the medium security prison in Mount Pleasant. No reason was given for their requested attendance, except that the "individuals have information which is crucial to the presentation of the plaintiff's case at his postconviction hearing . . . ."[1]

Noting that "[n]o showing has been made to the court that the prisoners Austin Druin or Dennis Fry would be of any benefit to plaintiff or the State in resolving constitutional questions," and "the tremendous expense to the taxpayers," the trial court denied the application for testimony by the inmate witnesses. The order provided, however, that "[i]f counsel for the plaintiff can show the court wherein the testimony of those witnesses are material to any issues raised by the plaintiff, the court will reconsider the application." Hahn made no subsequent showing of the need for the "live" testimony as suggested.

Following the court's refusal to order their live testimony, interrogatories were served upon Fry and Druin. Fry did not respond to the interrogatories; however, after he was transferred to a "halfway house" in Waterloo, Hahn requested and obtained an order for taking his deposition. This deposition revealed that prior to Hahn's guilty plea, Fry had assaulted Hahn, apparently for revenge, while both were confined in the Black Hawk County jail.

No request was made to take the deposition of Druin, who remained in prison.

However, Hahn again applied for an order for Druin's *personal* appearance at the postconviction hearing, stating the responses to written interrogatories "indicate[d] that Mr. Druin had some information which would be vital to the plaintiff's postconviction relief hearing." The trial court refused, stating in its order that any testimony by Druin would have to be in the form of answers to written interrogatories. A "Resistance to Court's Order" (apparently an application to reconsider) was filed, asserting incompleteness of Druin's answers and arguing his in-person testimony was "vital" to Hahn's case, again without details as to the purpose of his testimony. No ruling on this motion appears, but we assume from the circumstances that it was overruled. *See State v. Walker*, 304 N.W.2d 193, 195 (Iowa 1981).

The postconviction hearing proceeded with the testimony of Hahn, Ms. Kuehn, and another "Jail Concerns" visitor. In addition, Fry's deposition, Druin's answers to interrogatories and a transcript of the prior guilty plea proceedings were made a part of the record. The trial court, concluding that Hahn had not been "under any extraordinary strain which could reasonably be found to invalidate his plea" and that the other grounds relied upon in the application had not been established, denied postconviction relief. On appeal, Hahn challenges the trial court's rulings only as to his requests for the subpoenas and in denying his requested relief "against the weight of the evidence."

■ *I. Refusal to order Druin's appearance.* In his first assignment of error, Hahn challenges the trial court's refusal "to allow [him] to procure the presence of two incarcerated individuals to testify at the hearing or at least to allow the oral deposition of Austin Druin." However, we do not find any indication in the record that he preserved error as to the court's refusal to order in-court testimony by Fry. Following the court's refusal to order the personal

---

1. The application for postconviction relief itself was similarly vague as to any purpose which might be served by this testimony. The requirements of section 663A.4, that a postconviction application "specifically set forth the grounds upon which [it] is based" and provide "affidavits, records or other evidence supporting its allegations," were not observed here.

appearance of either witness, Hahn took the deposition of Fry. Hahn's later application to procure in-court testimony was limited to Druin; Fry was not mentioned. Any objection to the refusal of the trial court to order Fry's in-court testimony was thus waived. Similarly, Hahn's application to take the deposition was limited to Fry; he made no request to take Druin's deposition. Because Hahn made no request for Druin's deposition, he may not claim the trial court erred in failing to order it. Thus, despite the fact several issues are encompassed in Hahn's assignment of error concerning these witnesses, we address only one: Was it error for the court to deny the request for in-court testimony of inmate Druin?

█ Hahn contends that Druin's answers to interrogatories were less effective than his live testimony would have been, that the trial court would have been in a better position to assess Druin's credibility had he testified in person and that, in any event, he had the right under Article I, Section 10 of the Iowa Constitution to have compulsory process issue for this witness. In that section the Constitution provides:

> In all criminal prosecutions, and in cases involving the life, or liberty of an individual the accused shall have a right to a speedy and public trial by an impartial jury; to be informed of the accusation against him, to have a copy of the same when demanded; to be confronted with the witnesses against him; to have compulsory process for his witnesses; and, to have the assistance of counsel.

In an early case in which a defendant charged with murder sought the attendance of an imprisoned witness, this court said that a defendant

> possesses no absolute right under the Constitution or the statute in question [providing for testimony by imprisoned witnesses] to demand the personal attendance of a convict in the penitentiary or county prison under an order of the court . . . .

*State v. Kennedy*, 20 Iowa 372, 373 (1866); *see also State v. Wiltsey*, 103 Iowa 54, 55–56, 72 N.W. 415, 415 (1897) (affidavit of

witness in lieu of personal attendance, because of illness, sufficient to satisfy constitutional right of compulsory process). The parameters of the constitutional right of compulsory process, delineated in *Kennedy* and *Wiltsey* as to criminal trials, should be no broader in a postconviction relief case, which is generally considered to be civil in nature. *See Emery v. Fenton*, 266 N.W.2d 6, 10 (Iowa 1978); ABA Standards for Criminal Justice, *Post-Conviction Remedies* § 1.2, at 25, § 4.6, at 72 (1968) (no "automatic attachment" to the postconviction proceeding of all constitutional rights in criminal proceeding). We conclude that an order for the personal appearance of Druin was not constitutionally mandated; moreover, the *means* of implementing any right of compulsory process would lie within the discretion of the trial court. *See Kennedy*, 20 Iowa at 373. For the reasons discussed later, we conclude the trial court here did not abuse this discretion.

Resolving the *constitutional* issue, however, still leaves the question whether the personal appearance is mandated by our postconviction *statute*, chapter 663A. That chapter grants considerable latitude to the court as to the form of evidence which may be considered. For example, section 663A.7 provides that "[t]he court may receive proof of affidavits, depositions, oral testimony, or *other evidence*, and *may* order the applicant brought before it for hearing." (Emphasis added.) The applicant himself may, in the discretion of the court, be denied the right to appear personally.

█ The American Bar Association's Advisory Committee on Sentencing and Review has recognized the need for a full presentation of the relevant facts: "To facilitate presentation of evidence [at the hearing], both parties should have power to subpoena witnesses. Such power should be broad enough to reach anyone subject to the jurisdiction of the sovereign from whom relief is sought." ABA Standards, *supra* § 4.6, Commentary at 75. Nevertheless, it has also recognized the need for special discovery rules applicable to postconviction proceedings. *Id.* § 4.5, and Commentary at

67–71. In virtually every case the applicant is confined in prison; many times, as in this case, potential witnesses are also confined. The personal attendance of these inmates at every postconviction hearing would create problems of cost and security, and would almost certainly encourage the filing of repetitive and groundless applications for the purpose of getting "a day on the outside." *See id.*, Commentary at 69 (urging careful screening to limit hearings in view of this fact). It is suggested that any utilization of discovery procedures may be subject to a showing of good cause and that employment of discovery techniques should be subject to continuing court supervision. *Id.* § 4.5(b)(iii), at 68. We believe this view is reflected in chapter 663A and that, while an applicant for postconviction relief should be permitted to utilize the power of the court to secure the testimony required for a full presentation of his case, the *manner* of its presentation must lie within the discretion of the trial court.

Through Druin's testimony, Hahn proposed to corroborate his claim of involuntariness in the entry of his plea of guilty because of the abuse he allegedly received in the jail. Druin's answers to interrogatories revealed that he had been in jail with Hahn just prior to Hahn's guilty plea; that he had heard jailers talking about Hahn's "getting beat up," and that their conversation indicated the beating had been arranged by the jailers; that Hahn appeared to have been sprayed with mace; that such abuse was "nothing new" at the Black Hawk County jail; and that Druin himself had been subjected to abuse there.

It was stipulated that the alleged assault on Hahn occurred on December 10, 1977; Hahn's change of plea to guilty occurred on March 18, 1978, over three months later. The evidence presented at the hearing shows that after the assault by Fry, Hahn was moved and that no further assaults occurred. Even assuming Druin's in-court testimony would have conclusively established the facts related in his answers to interrogatories, the incidents revealed were so attenuated in time as to make any finding of coercion doubtful.

Because no preliminary showing was made of the need for Druin's personal appearance, and because in any event, the events to be related by him were so remote in time and effect as to be of very little probative value, the trial court did not abuse its discretion in denying Hahn's application to order Druin's personal appearance.

■ *II. The court's refusal to grant postconviction relief.* The issue remains whether, in view of the evidence which was presented to the trial court, it improperly denied postconviction relief. Proceedings under chapter 663A are law actions, triable to the court, and ordinarily are reviewed only on error. *Benton v. State*, 199 N.W.2d 56, 57 (Iowa 1972). However, when there is an alleged denial of a constitutional safeguard, we make our own evaluation of the totality of circumstances under which the postconviction ruling was made. *Stanford v. Iowa State Reformatory*, 279 N.W.2d 28, 31 (Iowa 1979); *Bizzett v. Brewer*, 262 N.W.2d 273, 274 (Iowa 1977); *State v. Lemburg*, 257 N.W.2d 39, 45 (Iowa 1977). Issues of voluntariness involve the constitutional right to due process. *Lemburg*, 257 N.W.2d at 45. We therefore apply the totality of circumstances standard here.

The transcript of Hahn's guilty plea, admitted into evidence at his postconviction hearing, shows the following exchanges in regard to voluntariness:

The Court: Have any threats been made to you or your family or anybody else to get you to plead guilty?

Mr. Hahn: No Sir.

The Court: Have you been placed in fear by anyone so that you would plead guilty?

Mr. Hahn: No, sir.

The Court: Are you under any stress or emotional strain today so you can't think clearly?

Mr. Hahn: A little bit but not enough to bother me.

Addressing Hahn's trial attorney, Wallace Parrish, the court made this record:

Are you satisfied the defendant is able to make a voluntary plea of guilty and understand the consequences of what he is doing in the courtroom today?

Mr. Parrish: Yes, I am.

\* \* \* \* \* \*

The Court: Did he sign [a written plea of guilty] voluntarily?

Mr. Parrish: Yes.

Later, the court inquired:

I would ask you, Mr. Parrish, are you satisfied that the defendant has knowingly, intelligently and voluntarily entered a plea of guilty to the crime of rape . . . .?

Mr. Parrish: Yes, I am.

Then, after announcing several findings which it had made from the record, the court said:

I find the defendant's plea of guilty is voluntary . . . [and] I find there have been no improper inducements or persuasions or threats or misrepresentations brought to bear against the defendant to produce a plea . . . .

The court announced other findings, then asked, "[d]o you agree with those findings, Mr. Hahn?" Hahn replied that he agreed. At no time, according to the guilty-plea record, was there any mention of the alleged coercion.

When the plea record is facially sufficient to satisfy the requirements of due process, the burden of proving the contrary, by a preponderance of the evidence, is upon the applicant for postconviction relief. *See Cleesen v. State*, 258 N.W.2d 330, 332 (Iowa 1977); *Watts v. State*, 257 N.W.2d 70, 71 (Iowa 1977); *Long v. Brewer*, 253 N.W.2d 549, 554 (Iowa 1977). We conclude for the reasons discussed in Division I that Hahn's evidence of coercion was insufficient to sustain that burden. The other grounds asserted in Hahn's application in the trial court are not raised on appeal.

We conclude the trial court properly denied the application.

AFFIRMED.