Katheryn L. SALLIS, Appellant,

v.

Kay RHOADS, Acting Superintendent, Women's Reformatory, Rockwell, City, Iowa; Division of Adult Corrections, Department of Social Services, State of Iowa, Appellee.

No. 67163.

Supreme Court of Iowa.

Oct. 27, 1982.

Alfredo G. Parrish, Des Moines, for appellant.

Thomas Miller, Atty. Gen., Steven M. Foritano, Asst. Atty. Gen., and David E.

Richter, Pottawattamie County Atty., for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, McGIVERIN, LARSON, and CARTER, JJ.

HARRIS, Justice.

Petitioner's counsel undertook a somewhat bold trial strategy in her trial for first-degree murder. The strategy, which might well have resulted in an acquittal, backfired; petitioner was convicted of first-degree murder. In this postconviction proceeding she asserts the strategy amounted to ineffective assistance of counsel. The postconviction court denied her petition. We affirm.

Petitioner was convicted for her part in the murder of her husband. It was a contract killing which involved others. *See State v. Reese*, 259 N.W.2d 771 (Iowa 1977) (reversing conviction of another participant); *State v. Reese*, 301 N.W.2d 693 (Iowa 1981) (conviction affirmed on retrial).

The State's evidence showed that petitioner signed a note which offered to compensate anyone for killing her husband. There was evidence she may have been drinking when she signed the note and had attempted later to rescind the "contract." Petitioner and her trial counsel hoped this evidence would negate the evidence of specific intent required for first-degree murder. Accordingly they elected to seek outright acquittal by deliberately refraining from seeking a jury instruction for second-degree murder or manslaughter.

Petitioner's trial counsel testified he and Sallis "felt confident that we were entitled to a not guilty verdict . . . and we felt confident that we had sufficient evidence on the lack of specific intent to eliminate the first degree." He thought, and it could well be true, that inclusion of the lesser included offenses such as second-degree murder or manslaughter would have reduced petitioner's chances of acquittal.

After petitioner was convicted her trial counsel moved for a new trial but did not question the court's failure to instruct the jurors on included offenses. After that motion was denied she appealed her conviction to this court, asserting the trial court had a duty to *sua sponte* instruct the jury on second-degree murder. We rejected the argument, *State v. Sallis*, 262 N.W.2d 240, 248 (Iowa 1978), and held that her failure to request the instruction or object to its omission "deprives [her] of a basis for successful appeal in this court . . . ."

I. A claim of ineffective assistance of counsel is a constitutional claim. *See Zacek v. Brewer*, 241 N.W.2d 41, 50–51 (Iowa 1976). Hence we make an independent evaluation of the totality of circumstances. *Sims v. State*, 295 N.W.2d 420, 423 (Iowa 1980). It is incumbent upon one asserting the claim to establish it by a preponderance of the evidence. *Snethen v. State*, 308 N.W.2d 11, 14 (Iowa 1981); *Kellogg v. State*, 288 N.W.2d 561, 563 (Iowa 1980). The claimant must develop an affirmative factual basis to demonstrate counsel's inadequate representation. *Hinkle v. State*, 290 N.W.2d 28, 30 (Iowa 1980). Counsel's performance under our de novo review must fall within the range of normal competency. *Snethen*, 308 N.W.2d at 14.

It is apparent that petitioner's trial counsel's decision to go for "first degree or nothing" was deliberate. He was an experienced criminal lawyer, has practiced law since 1958, and defended in approximately a dozen murder cases. The trial court found, and we agree:

> That counsel kept in close touch with his client, the petitioner, during the course of this proceeding and with the assistance of petitioner, he settled upon a cohesive theory of defense. That said defense relied upon recision of a "contract" to murder petitioner's husband. That because of the defense which went to the heart of her complicity in the killing of Charles Sallis, petitioner and counsel for petitioner chose to submit the premeditated variety of first degree murder to the jury without the submission of second degree and manslaughter. That the intent of such action on the part of petitioner and counsel was to obtain a not guilty verdict

in light of the fact that it was their belief that the State had failed to prove one or more of the elements of first degree murder, and in the absence of such proof, the jury would have no alternative but to find the petitioner not guilty.

■ We do not make the competency determination on the basis of hindsight. It would be pointless here to speculate whether the strategy was good or bad because, for our purposes, it makes no difference. A trial lawyer's competence is tested in the light of the arena in which he must act. Even "[i]mprovident trial strategy, miscalculated tactics or mistakes in judgment do not necessarily amount to ineffective counsel." *Hinkle v. State,* 290 N.W.2d at 34.

> Ordinarily, except for such basic decisions as to whether to plead guilty, waive a jury, or testify in his or her own behalf, the accused is bound by the tactical or strategic decisions made by counsel, even those rising to constitutional dimensions.

*Sims v. State,* 295 N.W.2d at 425. Furthermore,

> Lawyers may differ on how to defend a murder case, particularly after a guilty verdict is in. We do not indulge in nice distinctions concerning tactics nor in condemning necessarily desperate decisions which backfire.

*State v. Mulder,* 313 N.W.2d 885, 891 (Iowa 1982). Federal cases are in accord. *McMann v. Richardson,* 397 U.S. 759, 770–71, 90 S.Ct. 1441, 1448, 1449, 25 L.Ed.2d 763, 773 (1970); *Beasley v. United States,* 491 F.2d 687, 696 (6th Cir. 1974).

■ Petitioner's contention here is nearly identical to the one we rejected in *State v. Veverka,* 271 N.W.2d 744 (Iowa 1978). Veverka contended he was denied effective assistance of counsel because his trial lawyer failed to request instructions on lesser included offenses. We held that such a decision was well within the normal range of competency:

> Counsel stated he had explained the range of penalties possible on lesser included convictions and defendant wished "to go with all or none." The term "ineffective assistance of counsel" does not

mean that every mistake in judgment or error in trial strategy by an attorney serves to deprive an accused of a constitutional right. [Authority.] Trial tactics may dictate that counsel forego certain avenues of defense in pursuit of the perceived best interests of the accused.

271 N.W.2d at 750.

We conclude that petitioner's trial counsel's performance fell well within the range of acceptable professional competence. Petitioner's contention to the contrary is without merit.

■ II. Petitioner separately asserts she was deprived of her due process rights by the trial court's refusal to allow her to be personally present at the postconviction hearing. She argues she should have been allowed to personally present crucial evidence. Specifically, she suggests her recollection of her trial court strategy does not square with her counsel's version. A factual question was raised, she maintains, as to whether her trial counsel presented all the possible defense options to her as he now maintains. Had she been allowed to testify on this factual matter, she continues, the postconviction result might well have been different.

By statute the matter is wholly discretionary with the trial court: "The court may receive the proof of affidavits, depositions, oral testimony, or other evidence, and may order the applicant brought before it for the hearing." Iowa Code § 663A.7 (1981). We have recognized the discretion accorded by the statute in *Hahn v. State,* 306 N.W.2d 764, 767 (Iowa 1981). In *Patterson v. State,* 294 N.W.2d 683, 685 (Iowa 1980), we recognized that a postconviction hearing need not include a petitioner's testimony. But *Patterson* created an exception to the general statutory rule when questions of fact are presented:

> He wanted to so testify. He should have been allowed to do so. We recognize a postconviction hearing need not include petitioner's own testimony, *See* section 663A.7, The Code. However, in the present case, the issue involved a fact

question; defendant was present in court; nothing prevented the presentation of his version of events which, if established, would have entitled him to relief on constitutional grounds. The trial court was disinclined to hear him because of a prior determination his story would not be credible. We believe this conclusion can be properly reached only *after* testimony is heard and evaluated. *Id.* (emphasis in original). We note that Patterson was personally present in court but simply not allowed to testify. The petitioner here was not present in court.

In *Hahn* we acknowledged and described the practical difficulties involved:

> In virtually every case the applicant is confined in prison; many times, as in this case, potential witnesses are also confined. The personal attendance of these inmates at every postconviction hearing would create problems of cost and security, and would almost certainly encourage the filing of repetitive and groundless applications for the purpose of getting "a day on the outside."

306 N.W.2d at 768.

We deemed it significant that the postconviction court invited Hahn to show why any particular witnesses were important to his case, indicating it would reconsider an application to subpoena them if he did so. Hahn's failure to attempt such a showing weighed heavily against him. *See* 306 N.W.2d at 768. The postconviction court here denied petitioner's request to attend the hearing with the same understanding: if Sallis's counsel could show "proof of such necessity to the court by way of affidavit or statement summarizing such proposed testimony," the order denying the personal appearance would be reconsidered. As in *Hahn,* the invitation was not accepted. Petitioner's deposition was not even taken. The postconviction court was thus left with only the conclusory statement of petitioner's present counsel that Sallis's testimony was "necessary."

We think that, in view of the cost and security problems involved, it is not too much to require a preliminary showing of need before allowing an incarcerated petitioner to personally attend postconviction proceedings. There was no abuse of discretion in refusing to order petitioner's personal presence at the hearing. Petitioner's contention to the contrary is without merit.

AFFIRMED.