**Jerome F. DEERING, Appellant,**

v.

**Crispus C. NIX, Warden, Iowa State Penitentiary, et al, Appellees.**

No. 68177.

Supreme Court of Iowa.

Nov. 24, 1982.

Gregory A. Johnson of Johnson, Phelan & Skewes, Fort Madison, for appellant.

Thomas J. Miller, Atty. Gen., Patricia Mullen Hulting, and Bruce McDonald, Asst. Attys. Gen., for appellees.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, SCHULTZ, and CARTER, JJ.

HARRIS, Justice.

The question here is whether a prisoner, charged and then cleared on disciplinary charges, must be returned from the general prison population to his former placement in a less restrictive correctional center. The answer turns on the meaning of the term "original status" which appears in a written prison policy guideline. The post-conviction court determined that the prisoner had no such right and we agree.

The petitioner was incarcerated as an inmate in the men's prison from 1979 to 1981 when he was transferred to the John Bennett Correctional Center. At the center he was allowed to work in a vocational program until December 24, 1981, when he was returned to the prison and placed in a lock-

up cellhouse. He was not given vocational work at the prison and was not told why his placement had been changed. He was later released from lockup and placed in the general prison population.

On January 8, 1982, he learned that his return from the center to the prison was prompted by a disciplinary charge that had been lodged against him. A disciplinary committee subsequently found he was innocent of that charge and the incident was expunged from his prison record. He lost no good time or honor time but was not sent back to the correctional center. His specific release date was not changed.

The prison's policy and procedure guideline # 10 states:

At the conclusion of testimony the hearing authorities shall, with or without the inmate present, review the testimony and make findings of fact and a decision of guilt or innocence based on the evidence given. If the inmate did not commit the rule violation, *he shall be reinstated to his original status* and his record made to show such. (emphasis supplied)

The petitioner maintains in this postconviction proceeding that the guideline gives him the right to be returned to the correctional center. He argues the guideline creates a liberty interest protected by due process. He believes that "original status" means his location at the time the charge was brought. Because the postconviction proceeding raises a constitutional question we make our own evaluation of the totality of circumstances under which the postconviction ruling was made. *Hahn v. State,* 306 N.W.2d 764, 768 (Iowa 1981).

■ I. Two principles are not disputed. The parties agree that the prison's disciplinary rules must comport with due process. *Fichtner v. Iowa State Penitentiary,* 285 N.W.2d 751, 756 (1979). And so long as the State has not limited or renounced its discretion in the matter the routine transfer of an inmate from one penal institution to another does not implicate a liberty interest that is protected by the due process clause. *Meachum v. Fano,* 427 U.S. 215, 226–27, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451, 460–61 (1976).

An Iowa statute gives the director of adult corrections the authority to determine the appropriate place of confinement for prisoners, including the power to transfer a prisoner from one institution to another:

The director of the division of adult corrections shall determine the appropriate place of confinement of any person committed to the director's custody, in any institution administered by the director, and may transfer the person from one institution to another during the person's period of confinement.

Iowa Code § 902.5 (1981).

Petitioner agrees that the foregoing rules apply where the state exercises unfettered discretion in inmate placement. He points to cases in which the state, either by statute or practice, has chosen to limit or circumscribe its discretion in dealing with inmates. *See Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 11–12, 99 S.Ct. 2100, 2105–06, 60 L.Ed.2d 668, 678 (1979); *Wright v. Enomoto,* 462 F.Supp. 397, 402–03 (N.D.Calif.1976) aff'd mem., *Enomoto v. Wright,* 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978). The distinction upon which petitioner relies was stated this way:

The demarcation between these two line of cases is fairly clear. Where statutes or prison policy statements have limited prison officials' discretion by imposing a specific prerequisite to the forfeiture of benefits or favorable living conditions enjoyed by a prisoner, an expectation or entitlement has been created which cannot be taken away without affording the prisoner certain due process rights. On the other hand, when prison officials have complete discretion in making a decision that will affect the inmate, no expectation or protected liberty interest has been created.

*Bills v. Henderson,* 631 F.2d 1287, 1292–93 (6th Cir.1980).

■ Proceeding on this principle, the petitioner contends that policy and procedure guideline # 10 grants prisoners the expectation that they will be reinstated to their

original placement if they are found innocent of a disciplinary charge. This "state-created right," according to the argument, cannot be "arbitrarily abrogated" because the guideline has created a "liberty interest" sufficient to invoke due process protection. This is true, according to petitioner, even though an inmate normally has no such "liberty interest" at stake when he has transferred from one prison to another.

The flaw in the petitioner's argument is that he makes "original status" mean the same thing as "location within the prison system." Status and location are simply not synonymous. The word status, as used in the guideline, is not a mere matter of location. It has to do with the level of security provided for the prisoner. Security would vary according to whether the prisoner were in the general prison population, in lockup, solitary confinement, or maximum security. More importantly it would have to do with the amount of honor and good time held by the inmate, matters which were unaffected by petitioner's move.

There is a further practical difficulty with petitioner's argument. If he were ordered back to John Bennett Correctional Center the director could, in the absence of any disciplinary proceeding, immediately order him back to the prison under section 902.5. Even if we were to equate the term "status" with "location" the petitioner would have no right to be kept at the correctional center after being returned there.

This practical consideration stems directly from section 902.5. Because the legislature has spoken on the subject we cannot accept petitioner's major premise. We do not believe the state has chosen to limit or circumscribe the director's discretion in locating inmates.

AFFIRMED.