STATE of Iowa, Appellee,

v.

Delbert Eugene WILKENS, Appellant.

No. 83–306.

Supreme Court of Iowa.

March 14, 1984.

Rehearing Denied April 6, 1984.

Alfredo G. Parrish, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Teresa Baustian, Asst. Atty. Gen. and Richard R. Schlegel, County Atty., for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, LARSON, CARTER and WOLLE, JJ.

WOLLE, Justice.

Delbert Eugene Wilkens was tried by jury and convicted of premeditated first degree murder in violation of Iowa Code section 707.2(1) (1981). On appeal he asserts that (1) his trial counsel was ineffective for failing to present adequately a diminished capacity defense and (2) the evidence was insufficient to support the verdict of first degree murder. Finding no merit in either contention, we affirm the defendant's conviction.

Defendant was convicted of murdering Harry Harville at Rusty's tavern in Ottumwa, Iowa. There is little dispute about the events which led up to the encounter between Harville and defendant in the tavern. On the morning of April 13, 1982, the defendant was unable to go to work because he had a backache. He went to the doctor's office and on returning home drank 3 or 4 beers. He then went to a gunsmith's shop in the country and there purchased a .22 caliber long barrel revolver and also picked up a friend's gun that was being repaired. Defendant next went to his stepfather's house, where he drank 5 or 6 beers. After driving around town for a while he encountered his friend Bernie DeKraai. DeKraai accompanied the defendant first to one tavern, where they drank 2 or 3 beers, then to Rusty's tavern.

Defendant was carrying his revolver in the waistband of his pants when he entered the tavern. He explained that when he was climbing out of his car at Rusty's, he noticed his revolver protruding from under the center armrest of his car and took it with him into the bar so it would not be stolen. After sitting at the bar for several minutes, defendant thought he recognized a woman standing by the jukebox and went over to talk to her. As he approached the jukebox, the defendant realized that the woman was his former girlfriend, Donna McCombs, who was then Harville's fiancee. While defendant was exchanging a few words with McCombs, Harville came up to the defendant from behind and placed his hands on him. The witnesses disagreed as to the forcefulness of Harville's contact with defendant. Defendant and DeKraai testified that Harville put both hands around defendant's neck and shoulder and applied a great amount of pressure, while other witnesses testified that Harville merely placed one hand on the defendant's shoulder. The only persons who could hear what then was said were the victim, defendant and McCombs. Defendant testified that Harville threatened to kill defendant. McCombs testified that Harville told the defendant to leave McCombs alone.

Although the witnesses' testimony differed as to what happened next, the witnesses agreed that Harville and defendant separated to a distance of at least three feet from each other. At this point, most of the witnesses, including McCombs, believed that the altercation was over and disregarded what was about to happen. The testimony disclosed, however, that de-

fendant then pulled the revolver from his trousers, shouted Harville's name twice, and fired the revolver twice, the bullets striking Harville in the leg and upper abdomen. After a scuffle involving defendant, Harville and several other patrons of the tavern, the defendant tossed the gun over the bar, sat down on a barstool, and waited for the police to arrive. Harville was taken to a hospital but died from the gunshot wounds.

## I. *Ineffective Assistance of Counsel.*

In his motion for new trial, and again in this appeal, defendant has asserted that ineffectiveness of his trial counsel deprived him of a fair trial. He contends that his trial counsel should have prepared more thoroughly and presented to the jury more effectively the theory that defendant was so intoxicated and drugged that he could not have formed the requisite specific intent for first degree murder. Although the jury was instructed on diminished capacity based on evidence that the defendant drank approximately 10 to 13 beers during the several hours preceeding the killing of Harville, defendant's counsel did not offer the available evidence that defendant's blood-alcohol level was .219 and that defendant was taking medication which may have further impaired his judgment. After the jury returned its verdict finding defendant guilty of first degree murder, defendant retained new counsel and this additional evidence was introduced at the hearing on the motion for new trial. Defendant now argues that, given the State's burden of proving each element of first degree murder beyond a reasonable doubt, the admission of this additional evidence of intoxication would have convinced the jury that the defendant was incapable of forming the specific intent to commit first degree murder. Defendant also contends that his trial counsel failed to investigate thoroughly and obtain all evidence which might have been introduced on that issue of specific intent.

Because defendant's claim of ineffectiveness of counsel is based upon his constitutional right to a fair trial, we make an independent evaluation of the totality of circumstances involved. *Sallis v. Rhoads,* 325 N.W.2d 121, 122 (Iowa 1982); *Sims v. State,* 295 N.W.2d 420, 422 (Iowa 1980). Counsel's performance under our de novo review must fall within the range of normal competency. *State v. Blackford,* 335 N.W.2d 173, 178 (Iowa 1983); *Sallis v. Rhoads,* 325 N.W.2d at 122. We have also held, however, that an attorney's decision regarding strategy or tactics does not ordinarily provide an adequate basis for a claim of ineffective assistance of counsel. *State v. Newman,* 326 N.W.2d 788, 795 (Iowa 1982); *Sallis v. Rhoads,* 325 N.W.2d at 123; *State v. Killpack,* 276 N.W.2d 368, 372 (Iowa 1979). When trial counsel makes a reasonable decision concerning strategy, we will not interfere simply because the chosen strategy does not achieve the desired result. *State v. Newman,* 326 N.W.2d at 795; *Fryer v. State,* 325 N.W.2d 400, 413 (Iowa 1982).

We conclude that defendant's trial counsel was well within the normal range of competency in deciding upon a sound trial strategy and in developing and presenting evidence consistent with that strategy. At the hearing on the motion for new trial, defendant's trial counsel testified that, after conferring with defendant, he decided to emphasize to the jury that the defendant was acting in self defense. He testified he believed self defense was the most effective defense, and that he also believed this defense would be heavily dependent upon the jury accepting defendant's own testimony supporting his version of what happened. He therefore decided that he should not give undue emphasis to the defendant's state of intoxication but rather should focus on the credibility and plausibility of defendant's testimony that he acted in self defense. The trial attorney's tactical decision to concentrate on self defense rather than a diminished capacity theory made sense for one other important reason. Justification is a complete defense. *See State v. Jeffries,* 313 N.W.2d 508, 509 (Iowa 1981). The defense of diminished capacity, on the other hand, was

only relevant to the element of specific intent and would have had little if any effect on such lesser included charges as murder in the second degree and manslaughter.

■ Choices of strategy similar to that confronting defendant and his counsel have been the subject of ineffective assistance claims in this court and other courts. When the trial attorney acts reasonably in selecting and following through on the chosen strategy, the claim of ineffectiveness is without merit. *See, e.g., State v. Brokaw,* 342 N.W.2d 864, 865 (Iowa 1983); *State v. Lemburg,* 257 N.W.2d 39, 46 (Iowa 1977); *State v. Holtan,* 205 Neb. 314, 320–22, 287 N.W.2d 671, 675, *cert. denied sub. nom. Holtan v. Nebraska,* 449 U.S. 891, 101 S.Ct. 250, 66 L.Ed.2d 117 (1980); *Hinkle v. Scurr,* 677 F.2d 667, 670–71 (8th Cir.) *cert. denied,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 609 (1982).

■ In *State v. Veverka,* 271 N.W.2d 744, 750–51 (Iowa 1978), our court held that the defense attorney's strategic decision not to introduce evidence of impaired judgment did not constitute ineffective assistance of counsel. There, the defendant was charged with first degree murder committed during the perpetration of arson. The defense was that the fire was accidentally set. On appeal, the defendant argued that his trial counsel was ineffective because he failed to make further investigation concerning the effect of the defendant's drug withdrawal on the defendant's ability to form that specific intent which is an element of arson. The trial attorney in *Veverka* made a tactical choice similar to the choice confronting the trial counsel in this case. There the trial attorney had reason to be concerned that if he offered evidence of the defendant's drug withdrawal to negate intent, the impact would probably be to reduce the credibility of defendant's statements concerning the blaze. *Id.* at 749. We denied defendant's ineffectiveness claim, noting that had trial counsel introduced evidence of the effect of drug withdrawal, that evidence would probably have harmed rather than strengthened defendant's accidental fire defense. Similarly, we conclude here that defendant's trial counsel made a sound tactical choice in deciding, after conferring with his client, that he should focus primarily on self defense. At the time he reasonably decided not to weaken that defense by offering more evidence of intoxication, such as defendant's blood alcohol level, because that evidence would have tended to reduce the credibility of defendant's testimony about the altercation with Harville.

We repeat what we recently said in *State v. Newman,* 326 N.W.2d at 795:

Clients are disposed to equate competence with success; but a lawyer can only do what the facts and circumstances permit.

After a certain course has proven unsuccessful, it is easy to say some other one should have been tried instead. This is unfair to counsel, who must make a choice between existing alternatives *before* the fact. We have refused to assume the role of Monday morning quarterback in condemning counsel's judgment in choosing between what are frequently equally hazardous options available to him.

(Emphasis in original.)

Moreover, once defendant's trial counsel made a sound decision to emphasize self defense rather than diminished capacity as a defense, he reasonably stayed that course in his subsequent final trial preparations and presentation of the case to the jury. Once he reasonably decided to emphasize self defense he reasonably attempted thereafter to present the evidence in a light which would emphasize the defendant's accurate recall of what happened in the bar and de-emphasize the effect of alcohol and drugs on his system. Defendant has not shown that his attorney was ineffective in failing to flesh out more completely the defense of diminished responsibility when he reasonably thought that presentation of more evidence on that issue would have weakened considerably his justification defense. We agree with the trial court's conclusion that defendant is not entitled to

a new trial on the issue of ineffectiveness of counsel.

## II. *Sufficiency of the Evidence.*

Defendant also contends that he is entitled to a new trial because the evidence was insufficient to warrant submission to the jury of the count charging him with first degree murder. He argues that the State failed to prove beyond a reasonable doubt the elements of deliberation, premeditation, and defendant's specific intent to commit murder, contending that the evidence shows only that he shot Harville on the spur of the moment in self defense and that his judgment was impaired to such a degree that he could not have formed the requisite specific intent.

Due process requires that the State prove all the elements of a crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560, 571 (1979). The jury is not, however, required to accept the defendant's version of the facts. *State v. Pletka,* 310 N.W.2d 525, 527 (Iowa 1981); *State v. Hall,* 214 N.W.2d 205, 210 (Iowa 1974). We have recently restated the principles to be followed in determining sufficiency of the evidence:

> We view the evidence in the light most favorable to the State; all inferences that are fairly and reasonably deducted from the evidence are accepted; and all the evidence, not just that supporting the verdict is considered. Furthermore, the verdict will be upheld if supported by "substantial" evidence, *i.e.,* evidence which would convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt.

*State v. Freie,* 335 N.W.2d 169, 171 (Iowa 1983) (citations omitted). Applying those principles we find the evidence sufficient to support the jury's verdict of first degree murder in this case.

Deliberation and premeditation may be shown by circumstantial evidence in one of three ways:

(1) evidence of planning activity of the defendant which was directed toward the killing; (2) evidence of motive which might be inferred from prior relationships between defendant and the victim; and (3) evidence regarding the nature of the killing.

*State v. Freie,* 335 N.W.2d at 172, *quoting State v. Harrington,* 284 N.W.2d 244, 247–48 (Iowa 1979). While there was little evidence of planned activity in this case, defendant did use his own revolver, unquestionably a deadly weapon, to kill the fiance of his former girlfriend after the barroom scuffle appeared to have ended. Premeditation and deliberation need not exist for any particular length of time. *State v. Poyner,* 306 N.W.2d 716, 718 (Iowa 1981); *State v. Frazer,* 267 N.W.2d 34, 39 (Iowa 1978); *State v. Fryer,* 226 N.W.2d 36, 41 (Iowa 1975). The jury could reasonably conclude from the evidence in this record that the defendant had a sufficient opportunity to weigh in his mind, contemplate, and consider the consequences before shooting Harville. *State v. LeGear,* 346 N.W.2d 21, 25 (Iowa 1984); *State v. Poyner,* 306 N.W.2d at 718; *State v. Jackson,* 251 Iowa 537, 545, 101 N.W.2d 731, 736 (1960). Several witnesses testified that after Harville removed his hand from defendant and the two men separated, the altercation was at an end. Witnesses testified that the men were several feet apart when the defendant pulled his gun out; before defendant fired the fatal bullets, he first shouted Harville's name twice and Harville turned to face him. We conclude that the record sufficiently established defendant's opportunity to premeditate and deliberate before firing bullets into Harville's body at close range.

The jury could reasonably conclude from the evidence that defendant had formed the specific intent to kill Harville. When a person intentionally uses a deadly weapon in killing a victim, the jury may infer that he had formed the specific intent to kill. *State v. Mulder,* 313 N.W.2d 885, 888 (Iowa 1981); *State v. Smith,* 240 N.W.2d 693, 695 (Iowa 1976); *State v. Hall,* 214 N.W.2d 205, 210–11 (Iowa 1974). The effect of defendant's heavy drinking

on formation of the requisite specific intent to kill was for the jury to determine. *State v. Pletka,* 310 N.W.2d at 529; *State v. Winfun,* 261 N.W.2d 484, 486 (Iowa 1978).

The evidence viewed in the light most favorable to the verdict sufficiently established beyond a reasonable doubt all of the elements of first degree murder.

Defendant is not entitled to a new trial. The defendant's conviction of first degree murder is affirmed.

AFFIRMED.