**STATE of Iowa, Appellee,**

v.

**John William WALKER, Sr., Appellant.**

**No. 94–0599.**

Court of Appeals of Iowa.

June 27, 1995.

318

Linda Del Gallo, State Appellate Defender, and Patricia Reynolds Lapointe, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Robert P. Ewald, Assistant Attorney General, James J. Koll, County Attorney, and Cynthia Goins Voorde, Assistant County Attorney, for appellee.

Heard by DONIELSON, C.J., and HABHAB and HUITINK, JJ.

HABHAB, Judge.

On the evening of July 15, 1993, sometime after 9:00 p.m., John Walker went to pick up his wife Jackie at her parents' home. Walker and Jackie argued in the house. Jackie went outside and Walker followed. He requested to speak with her in the garage. Jackie agreed, went into the garage and sat on an old coffee table. Walker stood in front of her. Walker held out a gun. A shot was fired and Jackie was struck in the head with a bullet. Walker dropped the gun and ran away.

Walker encountered his friend Jerry Altman a few blocks from Jackie's parents' house. He told Altman he had accidentally shot Jackie and asked for a ride to the law enforcement center. Altman took Walker to Patty Diehl's house. Diehl called the hospital and learned Jackie was dead. Diehl then called the law enforcement center at Walker's request. She also called attorney Blake Parker.

Walker was arrested and taken to the law enforcement center. A blood sample was drawn from Walker at approximately 2:45 a.m. on July 16. Testing revealed Walker had a blood alcohol level of .177.

On July 22, 1993 Walker was charged with first-degree murder. On November 1, 1993 Walker filed a notice of defense of intoxication.

At Walker's jury trial, Jackie's eight-year old daughter, Tenesha, and son, J.R., testified they had witnessed the shooting. Tenesha had been outside sitting on the back of a car in the driveway and facing the garage. She stated she saw Walker point a gun at her mother and shoot. She did not see her mother grab at the gun. J.R. testified he was standing by a tree where he could see his mother and Walker in the garage. He saw Walker take the gun from his side, pull the latch back, pull the gun up, point it at his mother and pull the trigger. J.R. did not see any struggle for the gun.

Shalamya Diekman, Jackie's niece, testified about the argument Walker and Jackie had immediately before the shooting. Walker had told Jackie she had to pick between him and her kids. Shalamya stated J.R. had been inside the house with her when they heard the gunshot.

Jerry Altman testified he was with Walker through much of the day July 15, 1993. He saw Walker drinking beer and smoking crack cocaine in the evening. Another friend of Walker's, Brent Newton, had also been with him on July 15 and was with him when he drove to his in-laws' house. Newton testified they had been drinking; he estimated Walker had consumed more than a case of beer.

Patty Diehl and Blake Parker testified Walker was intoxicated and upset when they saw him after the shooting.

Jerry Altman further testified that when he picked Walker up on the street after the shooting Walker told him he had shot Jackie and the gun went off accidentally. A firearms expert, Mercellus Deats, Jr., testified for the defense. Deats explained he conducted tests on the murder weapon and found the gun would fire even though the trigger was not pulled. He found the gun to be in poor condition.

Danny Brown testified that a couple of months before Jackie was shot, while Walker and Brown were drinking together, they discussed Walker's relationship with Jackie. Brown heard Walker say, "Before I let her leave, I will kill her." Brown did not take Walker seriously. Kelly Brown, Jackie's sister, testified she heard Walker tell Jackie, "I'll kill you," approximately a year before the shooting. She said both Jackie and Walker laughed at this remark. Donald Rykhus testified that about a year and one-half before the shooting Walker was at his house after an argument with Jackie. Walker had said sometimes he would like to shoot Jackie.

Walker testified he was drunk on the evening of July 15. He remembered Jackie reaching for the gun and the gun going off.

The jury found Walker guilty as charged. Walker appeals.

**I. Sufficiency of the Evidence.** Walker contends there was insufficient evidence to support a conviction for murder in the first degree or murder in the second degree. Walker makes three arguments. First, he contends the shooting was a reckless act done without malice aforethought. Second, he argues his intoxication at the time of the incident vitiated any specific intent to kill. Last, Walker asserts there was insufficient evidence of deliberation and premeditation. We find all three arguments must fail.

▪ A verdict will be upheld where there is substantial evidence to support the charge. *State v. Smith,* 508 N.W.2d 101, 102 (Iowa 1993). Substantial evidence means such evidence as could convince a rational trier of fact the defendant is guilty of the crime charged beyond a reasonable doubt. *Id.* The evidence is viewed in the light most favorable to the State, including legitimate inferences and presumptions which may fairly and reasonably be deduced from the record. *State v. Phanhsouvanh,* 494 N.W.2d 219, 223 (Iowa 1992). We consider all the evidence at trial, not just the evidence that supports the verdict. *State v. Robinson,* 288 N.W.2d 337, 340 (Iowa 1980).

*A. Malice Aforethought.* Walker's first contention is there was insufficient evidence to show malice aforethought. Walker contends Jackie's death was an accident caused by a malfunction of a gun which amounts to a reckless act rather than one involving malice aforethought. Walker argues he cannot be found guilty of either murder in the first degree or murder in the second degree without a finding of malice aforethought.[1]

▪ Malice aforethought is "a fixed purpose or design to do some physical harm to another which exists prior to the act committed." *State v. Nunn,* 356 N.W.2d 601, 603 (Iowa App.1984) (quoting *State v. Sharpe,* 304 N.W.2d 220, 226 (Iowa), *cert. denied,* 454 U.S. 834, 102 S.Ct. 134, 70 L.Ed.2d 113 (1981)). The fixed purpose to do harm need not exist for any given length of time. *Nunn,* 356 N.W.2d at 603. It is sufficient if it exists at any time before the killing. *State v. Love,* 302 N.W.2d 115, 119 (Iowa 1981) (citing *State v. Hofer,* 238 Iowa 820, 834, 28 N.W.2d 475, 482 (1947)). Malice aforethought can be implied from use of a deadly weapon accompanied by an opportunity to deliberate. *Id.* Malice aforethought can also be implied from prior relations between the accused and the victim. *State v. O'Connell,* 275 N.W.2d 197, 202 (Iowa 1979).

▪ Prior to going outside, Walker and Jackie had an argument inside the house.

---

1. A murder is committed when a person kills another with either express or implied malice aforethought. Iowa Code § 707.1 (1993).

Walker was angry when he went outside.[2] Walker brought a loaded gun to Jackie's parents' house on the night in question. Walker asked Jackie to come into the garage so he could talk to her, and then proceeded to place the gun against her head after she sat down. The prior argument in the house, the use of a deadly weapon, and the interval of time between the argument and Walker putting the gun against Jackie's head support the inference of malice aforethought. We find, when viewed in the light most favorable to the State, substantial evidence exists in the record to support the jury's finding of malice aforethought.

B. *Specific Intent to Kill.* Walker's second contention is his intoxication on July 15 should have negated the possibility of specific intent to kill. Without this specific intent, Walker contends a conviction for first degree murder is improper.

■ While voluntary intoxication is not a defense to a crime, it may negate criminal intent if such intent is an element of the crime charged. *State v. Caldwell,* 385 N.W.2d 553, 557 (Iowa 1986). Murder in the first degree includes the criminal intent element of specific intent to kill. *See State v. Wilkens,* 346 N.W.2d 16, 20 (Iowa 1984). The defendant does not have the burden to prove intoxication negated the specific intent to kill. *State v. Templeton,* 258 N.W.2d 380, 383 (Iowa 1977). The burden to prove specific intent remains on the State, but this does not mean the State must prove an additional element that the defendant was not prevented from forming specific intent by reason of intoxication. *Id.* The defendant's alleged intoxication is simply evidence which the fact finder should consider on the issue of the defendant's specific intent. *Id.* The effect of defendant's drinking on the formation of the requisite specific intent was for the jury to determine. *Wilkens,* 346 N.W.2d at 20–21; *State v. Pletka,* 310 N.W.2d 525, 529 (Iowa 1981); *State v. Winfun,* 261 N.W.2d 484, 486 (Iowa 1978). The jury is not required to accept the defendant's version of

the facts. *State v. Trammell,* 458 N.W.2d 862, 863 (Iowa App.1990).

■ Steven Eck, a criminalist with the Department of Criminal Investigation specializing in the area of toxicology and alcohol analysis, testified regarding Walker's alcohol levels. On cross-examination, Eck provided the following testimony:

Q: In this case the blood alcohol of the Defendant was how much?

A: The blood alcohol was 17 point seven hundredths of the one gram of alcohol in 100 milliliters of blood.

Q: And the urine test was?

A: 15 hundredths of one gram of alcohol in 67 milliliters of the urine.

Q: Under most circumstances wouldn't that indicate that the person had had their last—or had been drinking recently because their blood alcohol level is going up?

A: Yes. That's a good possibility.

Q: The alcohol in the blood reflects how much is in the body and affected the brain at the moment, correct?

A: Yes. That is correct.

Q: The amount of alcohol in the urine tells you how much they have had in the past and is being metabolized by the kidneys and bladder and et cetera?

A: The alcohol in the urine is more of an average if the person has not had a chance to void his bladder recently and show you an average collection over the period of time between when he last voided the bladder and the time the sample was taken.

A reasonable inference from this testimony could be Walker's alcohol level was partially due to an alcohol intake after the shooting since his alcohol level was going up at the time the samples were taken. We find it was the jury's duty to determine the effect of Walker's drinking on the formation of the specific intent to kill. When viewed in the light most favorable to the State, we find

**2.** Jackie's sister testified Walker stated something to the effect of, "Let me out of here before I hit

her," prior to going outside.

there was substantial evidence to support the jury's finding of specific intent to kill.

C. *Deliberation and Premeditation.* Walker's third contention is there was insufficient evidence to support a finding of premeditation and deliberation. Without such a finding, Walker contends he cannot be found guilty of first degree murder.[3]

■ Deliberation and premeditation may be shown by circumstantial evidence in one of three ways: (1) evidence of planning activity of the defendant which was directed toward killing; (2) evidence of motive which might be inferred from prior relationships; and (3) evidence regarding the nature of killing. *Wilkens,* 346 N.W.2d at 20; *State v. Freie,* 335 N.W.2d 169, 172 (Iowa 1983); *State v. Harrington,* 284 N.W.2d 244, 247–48 (Iowa 1979). Evidence can be found in the record to support any of the three alternatives.

■ Once again, Walker and Jackie had an argument inside the house. Both of them then went outside and there was testimony Walker was angry at the time. Walker brought a loaded gun to Jackie's parents' house on the night in question. Walker asked Jackie to come into the garage to talk. Walker then pulled out the gun and placed it against Jackie's head and shot her.

Bringing the loaded gun to the house and asking Jackie out to the garage at a time when he was angry after an argument is evidence to support the planning alternative of deliberation and premeditation. The motive alternative can be supported by the evidence regarding Walker and Jackie's arguments prior to the shooting. Finally, the execution style nature of the shooting is circumstantial evidence supporting the third alternative. We find there is substantial evidence to support the jury's verdict regarding deliberation and premeditation.

II. *Ineffective Assistance of Counsel.* Walker alleges two related claims of ineffective assistance of counsel. Walker contends his trial counsel was ineffective for failing to object to evidence of prior acts and for failing to ask for a cautionary jury instruction. The evidence of prior acts consisted of statements made by Walker regarding his desire to either shoot or kill his wife. All of the statements were made between two months and one and one-half years before Jackie was killed. All of the statements were made when Walker was upset after an argument with Jackie and two of the statements were made after Walker had been drinking.[4]

■ Our ultimate concern in claims of ineffective assistance is with the " 'fundamental fairness of the proceeding whose result is being challenged.' " *State v. Risdal,* 404 N.W.2d 130, 131 (Iowa 1987) (quoting *Strickland v. Washington,* 466 U.S. 668, 696, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 699 (1984)). We review de novo the totality of the circumstances relating to counsel's conduct, keeping in mind the presumption that counsel performed competently. *Risdal,* 404 N.W.2d at 131. The burden is on the defendant to prove by a preponderance of the evidence that (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Id.* at 131–32.

■ In proving the first prong of this test, appellant must overcome the strong presumption counsel's actions were reasonable under the circumstances and fell within the normal range of professional competency. *State v. Hildebrant,* 405 N.W.2d 839, 841 (Iowa 1987). To prove the second prong of this test, appellant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

■ Claims of ineffective assistance of counsel are usually not adjudicated on direct appeal because the attorney charged with ineffectiveness has not had an opportunity to

---

3. Walker was found guilty of first degree murder because it was found he "willfully, deliberately, and with premeditation" killed Jackie. Iowa Code § 707.2(1) (1993).

4. The parties both agreed during a hearing on a motion in limine that all three of these witnesses' testimony regarding prior bad acts would be admissible.

respond to the allegations. *State v. McKettrick*, 480 N.W.2d 52, 56 (Iowa 1992). Such claims may be decided on direct appeal if the defendant fails to show one of the two prongs. *See State v. Welch*, 507 N.W.2d 580, 584 (Iowa 1993).

We find trial counsel had no duty to object to the evidence being presented since the evidence was clearly admissible under Iowa Rule of Evidence 404(b).[5] The disputed evidence was not being offered to show Walker acted in conformity with the prior acts since Walker's actions are not in dispute. Rather, the evidence was being offered to help prove the crucial issue of intent. Walker's intent to shoot Jackie was a hotly contested issue in the case as the previously discussed issue of sufficiency of the evidence shows. The disputed evidence goes to the heart of the intent issue and, as a result, was admissible under the "intent" exception of rule 404(b).

We further find this admissible evidence would not be excluded by Iowa Rule of Evidence 403.[6] As was previously mentioned, the probative value of this testimony was high. This high probative value would certainly substantially outweigh any minimal prejudice the testimony might cause. This claim of ineffective assistance of counsel is denied.

We find Walker's second claim of ineffectiveness for the failure to request a cautionary instruction should be preserved for possible postconviction proceedings. The record before us is inadequate and further proceedings would allow the allegedly ineffective attorneys to explain their conduct. *State v. Coil*, 264 N.W.2d 293, 296 (Iowa 1978). We only preserve this claim regarding the failure to request a cautionary instruction.

**AFFIRMED.**

---

**5.** Iowa Rule of Evidence 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

**6.** Iowa Rule of Evidence 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . .