# IN THE COURT OF APPEALS OF IOWA

No. 16-1252
Filed December 6, 2017

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**FREDDY DOUGLAS CRISP,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Calhoun County, Kurt J. Stoebe, Judge.

Freddy Crisp appeals his conviction for first-degree murder. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

Heard by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**VAITHESWARAN, Presiding Judge.**

Freddy Crisp shot his friend Dale Potter after a day and night of drinking. A jury found him guilty of first-degree murder. On appeal, Crisp challenges (1) the sufficiency of the evidence supporting the jury's finding of guilt, (2) his trial attorney's failure to object to an inference-of-malice jury instruction, and (3) the district court's denial of his motions for new trial. Crisp also raises several pro se claims.

## I.    *Sufficiency of the Evidence*

The jury was instructed the State would have to prove the following elements of first-degree murder:

> 1. On or about the 10th day of November, 2015, the Defendant shot Dale Potter.
> 2. Dale Potter died as a result of being shot by the Defendant.
> 3. The Defendant acted with malice aforethought.
> 4. The Defendant acted willfully, deliberately, premeditatedly, and with specific intent to kill Dale Potter.
> 5. The Defendant was not justified.

Crisp concedes he shot Potter and Potter died as a result of being shot. He argues "[t]he evidence presented by the prosecution does not show that [he] acted with malice aforethought, premeditation, or acted willfully, premeditatedly, or with the specific intent to kill," as specified in the third and fourth elements of the instruction. In his view, "[t]he effects of alcohol, along with the shock of shooting someone would certainly place someone in a state of bewilderment."

The jury was instructed on malice aforethought as follows:

> 1. "Malice" is a state of mind which leads one to intentionally do a wrongful act to the injury of another out of actual hatred, or with an evil or unlawful purpose. It may be established by evidence of actual hatred, or by proof of a deliberate or fixed intent to do injury. It may be found from the acts and conduct of the Defendant, and the

means used in doing the wrongful and injurious act. Malice requires only such deliberation that would make a person appreciate and understand the nature of the act and its consequences, as distinguished from an act done in the heat of passion.

2. "Malice aforethought" is a fixed purpose or design to do some physical harm to another which exists before the act is committed. It does not have to exist for any particular length of time.

Malice aforethought may be inferred from the Defendant's use of a dangerous weapon.

The jury also received the following definitions of "willfully," "deliberately," "premeditatedly," and "specific intent":

3. "Willful" means intentional or by fixed design or purpose and not accidental.

4. "To deliberate" is to weigh in one's mind, to consider, to contemplate, or to reflect.

5. "Premeditate" is to think or ponder upon a matter before acting.

6. "Specific intent" means not only being aware of doing an act and doing it voluntarily but, in addition, doing it with a specific purpose in mind.

The State preliminarily argues Crisp failed to preserve error on his challenge to the "willfully" and "deliberately" components of the fourth element. We agree Crisp's attorneys did not mention those words in their motion for judgment of acquittal. But the definitions of those words were largely coextensive with the definitions of premeditation and specific intent. *See, e.g.*, *State v. Schlitter*, 881 N.W.2d 380, 391 (Iowa 2016) ("'Willfully' is defined either as 'said or done deliberately or intentionally' or 'established by proof of intentional and deliberate conduct undertaken with a bad purpose, in disregard for the rights of another, or contrary to a known duty.'" (quoting *State v. Leckington*, 713 N.W.2d 208, 214 (Iowa 2006))). We conclude Crisp preserved error on his challenge to the sufficiency of the evidence supporting each component of the fourth element. We turn to the merits.

The following evidence was presented at trial. According to Crisp's neighbor, Crisp and friend Dale Potter spent the afternoon drinking and hanging out outside Crisp's house. In time, they got into a "serious argument," with "yelling back and forth." Early the following morning, the pair left and returned in Crisp's truck. The neighbor saw the two sitting in the truck with the passenger door open. Soon, she heard "a very loud noise" and heard Crisp say, "[O]h, God, no, no, no." She looked out and noticed Potter "slumped over" in the truck.

Crisp went into his home and, according to his wife, woke her up, said he "needed [her] help," and "called 911." He had a gun, which she took from him and placed in a laundry basket. Law enforcement officers arrived shortly thereafter. Crisp admitted to a scuffle in the truck. He told the Assistant Rockwell Police Chief he shot Potter. He said nothing about acting in self-defense. One spent bullet casing was found in the truck. It was determined to have come from Crisp's gun.

Crisp's story changed over time. Initially, he asserted Potter pulled out his gun and threatened to commit suicide. Crisp attempted to wrest the gun from him and the gun accidentally discharged. He stated his own gun remained in its holster. After it became apparent the fatal wound came from Crisp's gun, he admitted to firing his gun.

As noted, malice aforethought may be inferred from the use of a dangerous weapon. A gun is a dangerous weapon. *See State v. Green*, 896 N.W.2d 770, 780 (Iowa 2017) (noting court has approved an inference instruction "when defendants

discharged a firearm aimed at a victim"). A reasonable juror could have determined malice aforethought was proven.

A reasonable jury also could have surmised from evidence of an argument, a scuffle, and an inference Crisp removed his gun from its holster that he did not act accidentally but rather willfully, deliberatively, premeditatively, and with the specific intent to kill Potter. *See State v. Wilkens*, 346 N.W.2d 16, 20 (Iowa 1984) (stating "[p]remeditation and deliberation need not exist for any particular length of time" and concluding "the record sufficiently established defendant's opportunity to premeditate and deliberate before firing bullets into Harville's body at close range").

We recognize Crisp consumed alcohol for several hours. But "[t]he effect of [Crisp's] heavy drinking on formation of the requisite specific intent to kill was for the jury to determine." *See id.* at 20-21. It also was the jury's prerogative to give little credence to Crisp's evidence of justification. *See State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006) ("The jury members were free to give [the defendant's] testimony such weight as they thought it should receive."). We will discuss that evidence in more detail in our analysis of the district court's ruling on Crisp's new trial motion. Suffice it to say substantial evidence supported the jury's finding of guilt. *See id.* at 134 (setting forth standard of review).

## II. *Malice-Inference Jury Instruction*

Crisp challenges the district court's inference-of-malice instruction quoted above. He acknowledges, "The Iowa Supreme Court has approved use of

inference instructions under appropriate circumstances and has recognized that such instructions are generally supported by Iowa law," but he contends, "The evidence presented at trial in the instant case did not support introduction of the inference instruction." He asserts his trial attorney was ineffective in failing to object to the instruction. To prevail, Crisp must show (1) counsel breached an essential duty and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

After Crisp filed his brief, the supreme court addressed the malice-inference instruction in *State v. Green*, 896 N.W.2d 770, 781 (Iowa 2017). The court reiterated its approval of the instruction, citing *State v. Ambrose*, 861 N.W.2d 550, 560 (Iowa 2015), for the proposition that the court has "permitted the practice of instructing juries on inferences of malice from certain evidence since 1858." *Green*, 896 N.W.2d at 780-81. Although the court stated "[t]here may be circumstances where it would not be appropriate to infer malice," including where "the defendant had adequate provocation or fear of imminent bodily harm to use the weapon," the court concluded the instruction was appropriate under the facts of that case. *Id.*

*Green* is controlling. The opinion reaffirmed longstanding precedent approving the malice-inference instruction and rejected the virtually identical contention that the instruction was inappropriate under similar circumstances. Counsel did not breach an essential duty in failing to challenge the instruction.

### III. New Trial Motion

Crisp filed a motion for new trial. Although he did not assert the jury's finding of guilt was against the weight of the evidence, the district court addressed the

question and concluded, "[T]he jury's verdict was not against the weight of the evidence."

On appeal, Crisp contends the district court "abused its discretion in ruling that the weight of the evidence supports the verdict." *See State v. Shorter*, 893 N.W.2d 65, 71 (Iowa 2017) (setting forth standard of review). He argues "the shooting was in self-defense," no State witness "could refute" his testimony, and the State's case "relie[d] on inferences and assumptions." Assuming without deciding error was preserved and recognizing the district court did not expressly weigh the evidence, we discern no abuse of discretion. *See State v. Maxwell*, 743 N.W.2d 185, 193 (Iowa 2008) (noting we "are allowed to review the record to determine whether a proper basis exists to affirm the district court's denial of [the defendant's] motion for new trial").

On direct examination, Crisp admitted his original rendition of events was untrue. What truly prompted the shooting, he said, were Potter's statements "[a]bout his wanting to rape or have sex with [Crisp's] daughter" and Potter's punch to his lip. But, on cross-examination, Crisp retracted his assertion that Potter's words moved him to shoot Potter, stating, "I've been in situations where fellows have said things about my daughters before." As for the punch to his lip, he told law enforcement officers he initiated the scuffle.

Crisp's self-defense testimony was similarly problematic. While he testified he shot Potter after Potter threatened his life, he admitted he did not tell the 911 dispatcher he feared for his life. He also conceded he "could have just gotten out of the car." Given the inconsistencies in Crisp's statements, we conclude the jury's

finding of guilt was not contrary to the weight of the evidence and the district court did not abuse its discretion in denying Crisp's new trial motion under the *State v. Ellis*, 578 N.W.2d 655, 656 (Iowa 1998) standard.

## IV.    Pro Se Claims

Crisp raises several arguments in a pro se brief, apparently under an ineffective-assistance-of-counsel rubric.  The claims do not appear to be the same ineffective-assistance claims raised in a pro se new trial motion and rejected by the district court.  Crisp now takes issue with counsel's failure to (1) assist him with his pro se new trial motion; (2) raise an intoxication defense; (3) object to claimed prosecutorial misconduct during closing argument; (4) move for suppression of his custodial interrogation; (5) object to certain jury instructions, including the definitions of premeditate and justification; (6) challenge the district court's exclusion of certain evidence pertaining to Potter; (7) challenge the qualifications of the medical examiner; and (8) challenge certain evidence.

"In a criminal case, an ineffective-assistance-of-counsel claim 'need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for postconviction relief purposes.'"  *State v. Thorndike*, 860 N.W.2d 316, 319 (Iowa 2015) (quoting Iowa Code § 814.7(1) (2015)).  "However, a defendant may raise such a claim on direct appeal if he or she has 'reasonable grounds to believe that the record is adequate to address the claim on direct appeal.'"  *Id.* (quoting Iowa Code § 814.7(2)).

The record is inadequate to address the first four claims.  We preserve those claims for postconviction relief.

The record is adequate to address Crisp's challenges to several jury instructions. On our review of those instructions and our de novo review of the record, we conclude they accurately stated the law and were supported by the evidence, and Crisp's attorneys did not breach an essential duty in failing to challenge them.

The record is also adequate to address Crisp's challenge to the exclusion of evidence indicating Potter may have been on an FBI watch list and may have had a "RAP" sheet. The State and defense thoroughly discussed the issue at a hearing on the State's motion in limine, and the district court ruled the evidence would be unduly prejudicial. On our de novo review of the record, we agree the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. Counsel did not breach an essential duty in "failing to have all of this evidence about Dale Potter heard at trial."

We turn to Crisp's challenge to the medical examiner's qualifications. Crisp claims:

> The curriculum vitae . . . of Dr. Jonathan Thompson shows that he is not a surgeon but only a pathologist. The law is clear that the medical examiner has to be a physician and surgeon or osteopathic physician and surgeon and this medical examiner does not meet the criteria of Iowa law. Dr. Thompson cannot be considered an expert under Iowa law to be a medical examiner.

We find the record adequate to address this claim.

Iowa Code section 691.5 provides, "The state medical examiner shall be a physician and surgeon or osteopathic physician and surgeon, be licensed to practice medicine in the state of Iowa, and be board certified or eligible to be board certified in anatomic and forensic pathology by the American board of pathology."

*See also State v. Tyler*, 867 N.W.2d 136, 154 (Iowa 2015) ("Forensic pathologists are physicians who specialize in forensic pathology, meaning they received a Doctor of Medicine or a Doctor of Osteopathy, spent at least four years in a residency program, and then spent another year in a forensic pathology fellowship."). Dr. Thompson testified he was an associate medical examiner with a medical degree, specializing "in the field of medicine called forensic pathology." He possessed credentials matching the credentials specified in section 691.5. Accordingly, counsel did not breach an essential duty in failing to challenge his credentials.

We are left with Crisp's pro se challenge to the sufficiency of the evidence. As discussed, his trial attorneys raised a challenge to the sufficiency of the evidence but, in Crisp's view, they did not thoroughly explore certain evidence such as the punch he sustained, the absence of his DNA on Potter's gun, and the absence of blood on Potter's gun. To the contrary, his attorneys competently cross-examined the State's witnesses and elicited testimony from Crisp on the salient issues. They did not breach an essential duty in failing to delve deeper into the evidence cited by Crisp.

*V.* **Disposition**

We affirm Crisp's judgment and sentence for first-degree murder. We preserve the specified ineffective-assistance claims for postconviction relief.

**AFFIRMED.**