# IN THE COURT OF APPEALS OF IOWA

No. 22-1055
Filed August 30, 2023

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**RICHARD GEORGE FLECK JR.,**
    Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Story County, Amy M. Moore, Judge.


        Richard George Fleck Jr. appeals his conviction for murder in the first

degree. **AFFIRMED.**


        Shawn Smith of The Smith Law Firm, PC, Ames, for appellant.

        Brenna Bird, Attorney General, and Linda J. Hines, Assistant Attorney

General, for appellee.


        Considered by Bower, C.J., and Ahlers and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Richard George Fleck Jr. appeals his conviction for murder in the first degree. He contends the district court abused its discretion by denying his motion for mistrial. He also challenges the sufficiency of the evidence supporting his conviction, contending the State failed to meet its burden on one of the five required elements. Because the district court acted within its discretion in ruling on a mistrial and substantial evidence supports the jury's verdict, we affirm Fleck's conviction.

## I.  *Background Facts and Proceedings.*

The Ames Police Department discovered the body of Ranea Bell in the apartment she shared with Fleck. Authorities immediately identified Fleck as a prime suspect and released his photograph to the public, asking for anyone with information to come forward. Laura Zazueta responded to this request and gave a statement. Fleck was then interviewed by police.

During his interview, Fleck told police he was romantically involved with both Bell and Zazueta. He claimed that after confessing to Bell about his relationship with Zazueta, Bell immediately became violent, striking him with a vodka bottle and punching him. Fleck alleged he defended himself but "blacked out" without any memory of the incident. Afterward, he asked Zazueta to pick him up so the two could return to her place in Des Moines. Zazueta testified Fleck was covered in blood and told her his roommates were engaged in a physical fight to explain his appearance. Once in Des Moines, Fleck showered before asking Zazueta to drive him back to the apartment to determine whether police had been called. Fleck went inside alone before returning to Des Moines with Zazueta.

Following investigation, police determined Bell died from blunt force trauma. The State charged Fleck with first-degree murder, possession of a firearm as a felon, trafficking in stolen weapons, and third-degree theft.

During voir dire, three prospective jurors were questioned about their connection to key witnesses, which elicited statements at issue here. One juror recounted his familiarity with one of the police officers serving as a witness and admitted his inability to remain neutral. Another described a "close" friendship with a witness and expressed concerns about treating her testimony impartially. Finally, a third juror had connections to a witness through their children and likewise admitted that personal history *may* conflict with his duties as a juror if selected.

Following these lines of questioning, Fleck moved to strike all three for cause. The court struck two of the jurors. The third did not serve on the jury panel. Fleck timely moved for a mistrial, contending the statements made by the three prospective jurors were prejudicial as they constituted improper determinations of witness credibility. He also argues this unduly prejudiced his right to a fair trial because the remaining jury panel had heard these statements. The district court denied the motion, ruling there was not sufficient prejudicial effect to warrant a mistrial.

The jury found Fleck guilty on all four charges. On appeal, Fleck reasserts that the district court abused its discretion in denying him a mistrial and claims there is insufficient evidence to support a jury verdict. We review these claims in turn.

## II.    *Discretionary Ruling against Mistrial.*

On appeal, Fleck asserts the district court abused its discretion in denying his motion for mistrial.  *See State v. Webster*, 865 N.W.2d 223, 231 (Iowa 2015); *State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017) ("We review denials of a mistrial . . . for an abuse of discretion.").  We reverse the district court's decision only if the grounds or reasoning are "based on an erroneous application of the law or not supported by substantial evidence."  *Id.* (citing *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014)).

Fleck specifically points to the questioning of the three prospective jurors. He equates the information elicited from these jurors to impermissible character evidence elicited from a witness during trial and argues that it unfairly prejudiced the jury panel.  He further argues the actual bias of prospective jurors created implied bias in the selected jury panel.

"Unquestionably, a person accused of committing a crime has a fundamental right to a fair trial by an impartial jury whose determination of guilt or innocence is based exclusively on evidence admitted at trial."  *State v. Ary*, 877 N.W.2d 686, 700 (Iowa 2016) (citing *State v. Frank*, 298 N.W.2d 324, 326 (Iowa 1980)).  The district court can exercise its discretion to grant a new trial "[w]hen from any other cause the defendant has not received a fair and impartial trial." Iowa R. Crim. P. 2.24(2).  In regards to voir dire, one prospective juror is generally not going to contaminate an entire panel; however, it is possible to disqualify all affected jurors when the questioning "become[s] so inflammatory and potentially prejudicial."  *Ary*, 877 N.W.2d at 701 (citation omitted).  The court considers if the statements "reference the defendant, convey personal knowledge of the

underlying facts at issue, or relay objective data that might otherwise bear on the case." *Id.*

Fleck contends that the prospective jurors' questioning elicited credibility determinations outside of trial and contaminated the jury panel. But none of their statements were pertinent to Fleck or the specific facts of the case. Rather, they established the nature of the relationships between the prospective juror and their respective witness. While the prospective jurors expressed difficulty or concern about remaining impartial, none opined on Fleck's guilt or the charges themselves. Instead, this voir dire succeeded in ferreting out actual bias and removed prospective jurors from the panel who were at risk of being partial. *See Webster*, 865 N.W.2d at 237 ("[Jury selection] allows attorneys to determine whether there is a case for dismissing a juror and to form an intelligent basis for the exercise of peremptory challenges."). Because Fleck was able to exercise this right without imparting bias on the rest of the jury panel, the circumstances do not rise to the level of a mistrial. Therefore, the district court did not abuse its discretion in denying the motion for a mistrial.

### III.    Sufficiency of the Evidence.

The trial court instructed the jury that to find Fleck guilty of murder in the first degree, the State must prove the following elements beyond a reasonable doubt:

1. On or about February 19, 2021, [Fleck] struck [Bell].
2. [Bell] died as a result of being struck.
3. [Fleck] acted with malice aforethought.
4. [Fleck] acted willfully, deliberately, premeditatedly and with a specific intent to kill [Bell].
5. [Fleck] was not justified.

Jurors were further instructed that "premeditation need not exist for any particular length of time before the act" and was defined as "to think or ponder upon a matter before acting." Fleck only challenges the fourth element, arguing the State failed to present sufficient evidence to show he acted with premeditation and specific intent to kill.

We review sufficiency-of-the-evidence claims for correction of errors at law. *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). "In conducting that review, we are highly deferential to the [jury]," viewing the evidence in the light most favorable to the State and upholding the verdict if supported by substantial evidence. *Id.* "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.*

First, Fleck claims the evidence is insufficient to find he acted with premeditation. He asserts he "blacked out," preventing him from contemplating his actions, and there is a lack of evidence showing preparation. Premeditation can be established by circumstances, such as "evidence of (1) activity by the defendant to plan the killing, (2) motive based on the relationship between the defendant and the victim, or (3) the nature of the killing, including the use of a deadly weapon combined with an opportunity to deliberate." *State v. Buenaventura*, 660 N.W.2d 38, 48 (Iowa 2003). Premeditation can also be shown through the violent nature of the crime itself and the defendant's actions immediately following. *Id.* at 49 (describing the victim's attempts to defend herself from attack and the defendant's efforts to cover up evidence).

The evidence is sufficient to convince a rational factfinder beyond a reasonable doubt that Fleck acted with premeditation. While a deadly weapon was not used during the homicide and there is no evidence of substantial pre-planning, neither is required. Instead, a jury can make this finding based on circumstantial evidence. *Id.* at 48. First, evidence of motive was offered at trial. Facebook messages were presented to allegedly show Fleck's concerns about Bell being unfaithful. Further, the nature of the killing itself is probative. *Id.* The medical examiner responsible for Bell's autopsy testified that Bell suffered "significant bruising" and skull fractures. Finally, evidence of Fleck's actions following the events were introduced. Zazueta testified that he cleaned up and returned to the scene later. Based on the offered circumstantial evidence, a jury could make a finding that Fleck acted with premeditation.

Similarly, Fleck contends there is insufficient evidence to establish the requisite intent. He cites the blackout, claiming no evidence shows that he specifically intended to kill Bell. But the State introduced evidence of Fleck's interview with police, in which he recalled specific instances of the altercation with Bell. This directly conflicts with Fleck's claims he blacked out and remembered none of the events before waking at Zazueta's home in Des Moines. This type of credibility determination, including circumstances that impact the ability to form specific intent, is a jury determination. *See State v. Wilkens*, 346 N.W.2d 16, 20-21 (Iowa 1984). We do not evaluate the evidence based on our own determination but give great weight to the jury's finding. *Crawford*, 972 N.W.2d at 202. Viewing the evidence in the State's favor, a jury could determine the evidence sufficient to convict Fleck beyond a reasonable doubt. *See id.*

*IV.*    *Conclusion.*

The district court properly exercised its discretion when it ruled on the motion for mistrial.  Further, substantial evidence supports the jury's finding that Fleck acted with premeditation and specific intent to kill.  Therefore, we affirm Fleck's conviction of first-degree murder.

**AFFIRMED.**