# IN THE COURT OF APPEALS OF IOWA

––––––––––––––––––

No. 25-0281
Filed April 1, 2026

––––––––––––––––––

**State of Iowa,**
Plaintiff–Appellee,
v.
**Francisco Martinez-Pena,**
Defendant–Appellant.

––––––––––––––––––

Appeal from the Iowa District Court for Marshall County,
The Honorable Ashley M. Sparks, Judge.

––––––––––––––––––

**AFFIRMED**

––––––––––––––––––

Chad R. Frese of Frese & Waters, LLP, Marshalltown, attorney for
appellant.

Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney
General, attorneys for appellee.

––––––––––––––––––

Considered without oral argument
by Buller, P.J., Sandy, J., and Telleen, S.J.
Opinion by Sandy, J.

**SANDY, Judge.**

This appeal asks us to second-guess the jury's decision to find credible the child victim of sexual abuse. Because that is not our role, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

Francisco Martinez-Pena was charged in Marshall County with second-degree sexual abuse in violation of Iowa Code sections 709.1 and 709.3(1)(b) (2021), and indecent contact with a child in violation of section 709.12(1)(a).

The charges arose from acts occurring in October 2021 involving Martinez-Pena and his granddaughter, M.C., who was eight years old at the time. M.C. resided with her grandparents in Marshalltown, Iowa. On the evening in question, a thunderstorm caused M.C. to become fearful and reluctant to sleep alone. She asked Martinez-Pena to lie in bed with her, and he did so.

According to the evidence presented at trial, while in bed, Martinez-Pena placed his hand underneath M.C.'s clothing and touched her chest and genital area. M.C. testified that the contact occurred beneath both her pajamas and underwear and involved a rubbing motion. She suggested that the touching made her uncomfortable, although she remained in bed and eventually fell asleep. The following morning, M.C. reported to her grandmother that Martinez-Pena had touched her chest. Later that day, while at school, she disclosed additional details of the incident to a school counselor, who, as a mandatory reporter, initiated a report that led to a criminal investigation.

At trial, M.C. testified regarding both the chest and genital touching. She also expressed some uncertainty about whether Martinez-Pena may have

2

been asleep during the incident, noting that his eyes were closed and that he had been snoring, although she could not consistently recall whether he was snoring at the time of the contact.

The State presented testimony from a forensic interviewer, who explained that disclosures of child sexual abuse may occur incrementally over time rather than in a single, complete account. Martinez-Pena testified in his own defense, acknowledging that he was in bed with M.C. during the storm but denied any sexual contact. Following a two-day jury trial in September 2024, the jury returned guilty verdicts on both counts.

On January 24, 2025, the district court entered judgment and sentence. Martinez-Pena was sentenced to an indeterminate term of incarceration not to exceed twenty-five years on the second-degree sexual abuse conviction, subject to the statutory requirement that he serve at least seventy percent of the sentence before parole eligibility. On the indecent contact conviction, the court imposed an indeterminate term not to exceed two years. The sentences were to run concurrently.

The court also imposed applicable surcharges, costs, and restitution provisions, required Martinez-Pena to register as a sex offender, and imposed a lifetime special sentence. On appeal, Martinez-Pena contends that there was insufficient evidence to convict him.

## STANDARD OF REVIEW

Sufficiency-of-the-evidence claims are reviewed for the correction of errors at law. *State v. Lacey*, 968 N.W.2d 792, 800 (Iowa 2021).

# DISCUSSION

Martinez-Pena said it best in his brief—"[t]he fact pattern presented to the jury was, in essence, a 'he said/she said' scenario." And because the jury viewed M.C. as more credible than Martinez-Pena in answering the "he said/she said" question, we defer to their answer. *See State v. Lang*, 30 N.W.3d 757, 764 (Iowa Ct. App. 2025) ("[C]redibility questions are reserved for the factfinder, such that we do not reverse criminal convictions because of disagreements over whether testimony was believable.").

Martinez-Pena's arguments focus primarily on three points: (1) the alleged lack of corroborating physical evidence, (2) inconsistencies or limited detail in the child's disclosures, and (3) his contention that any contact may have occurred while he was asleep, negating the requisite intent. In other words, Martinez-Pena asks us to resolve conflicts in the evidence, pass upon witness credibility, and weigh the evidence anew. But those functions are exclusively reserved for the jury. *See id.* ("The lack of corroboration for victim testimony is irrelevant to a sufficiency analysis, which assumes the jury credited victim testimony absent corroboration."); *State v. Donahue*, 957 N.W.2d 1, 11 (Iowa 2021) ("Inconsistencies and lack of detail are common in sexual abuse cases and do not compel a jury to conclude that the victim is not credible."); *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (holding the trial court cannot assume the jury would believe the defendant's testimony).

Viewing the record in the light most favorable to the State, substantial evidence supports the jury's verdict on both counts. First, the victim testified that the defendant placed his hand beneath her clothing and touched both her chest and genital area. She described the nature of the contact and confirmed it made her uncomfortable. This testimony, if believed by the jury, was sufficient to establish the elements of both offenses, including the

existence of a "sex act" and the act of fondling or touching with the requisite intent.

Second, the absence of physical or forensic evidence does not render the evidence insufficient. *See State v. Skahill*, 966 N.W.2d 1, 15 (Iowa 2021) ("Corroborating evidence, physical or otherwise, is not required."). The charged conduct involved brief hand-to-body contact occurring in a private setting. The jury could reasonably conclude that such conduct would not necessarily produce physical evidence.

Third, the defendant's reliance on perceived inconsistencies in the victim's disclosures does not undermine the verdict. *See Donahue*, 957 N.W.2d at 11. The jury heard evidence that the victim initially disclosed only part of the conduct and later provided additional details. The jury was entitled to consider this context and to determine what weight, if any, to give the timing and scope of the disclosures. *See State v. Williams*, 315 N.W.2d 45, 58 (Iowa 1982) (explaining that "credibility of witnesses and the weight to be given their testimony is the sole province of the jury"); *State v. Trammell*, 458 N.W.2d 862, 863 (Iowa Ct. App. 1990) ("The very function of the jury is to sort out the evidence presented and place credibility where it belongs.").

Finally, the jury was free to reject Martinez-Pena's claim that he was asleep or otherwise unaware during the incident. Although the victim expressed some uncertainty on that point, she also described purposeful contact, including placement of the defendant's hand beneath her clothing and movement consistent with intentional touching. The jury could reasonably infer from the nature and circumstances of the conduct that it was not accidental or unconscious. Questions of intent are rarely susceptible to direct proof and may be inferred from the defendant's actions and the surrounding circumstances. *State v. Evans*, 672 N.W.2d 328, 331 (Iowa 2003)

("Intent is a matter that is seldom capable of direct proof."). Sex crimes tend to not occur in the open.

In sum, this case presented competing accounts of Martinez-Pena's conduct. The jury was tasked with resolving those conflicts. By returning guilty verdicts, the jury necessarily credited the victim's testimony and rejected Martinez-Pena's denial. On our review, we are bound by that determination so long as it is supported by substantial evidence. Because a rational jury could find the essential elements of both offenses proved beyond a reasonable doubt, the convictions are supported by substantial evidence. Accordingly, we affirm.

**AFFIRMED.**